# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| COREY SOMMERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAYNE MICHAEL HALL, | ) | Case No. CV408-257 |
| WARRIOR TRANSPORTATION, | ) | |
| LLC, AEQUICAP PROGRAM | ) | |
| ADMINISTRATORS, INC., and | ) | |
| CROWN PRODUCTS COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

In this vehicle-crash negligence case, defendant Crown Products Company, Inc. moves to strike plaintiff Corey Sommers's expert witnesses, Dr. Wayne Plumly and Kevin Breckenridge.[1] Doc. 154. Sommers opposes. Doc. 155. Some background:

Plaintiff was a passenger in a pickup truck that crashed into the rear of a tractor-trailer stopped in the emergency lane of an

---

[1] Its motion is based on Fed. R. Civ. P. 26, Fed. R. Evid. 702, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Doc. 101 at 1. It thus also invokes the discovery sanction rule, Fed. R. Civ. P. 37. A party who without substantial justification fails to disclose information required by Rule 26(a) risks exclusion of it at trial unless the omission is shown to be harmless. Rule 37(c)(1). Other sanctions, in lieu of exclusion, may be imposed. *Id.* The nondisclosing party must demonstrate either that its failure to disclose was substantially justified or that the failure is harmless. *See Morrison v. Mann*, 271 F. App'x 841, 845 (11th Cir. 2008).

interstate off-ramp. Crown owned the trailer. Plaintiff's single theory of liability against Crown is that when Defendant Wayne Michael Hall -- the driver of the tractor trailer -- called Crown to report a problem with the trailer's tail lights, Crown allegedly instructed Hall to try and fix the lights himself and continue driving.[2] [Moving] for Summary Judgment, Crown argued that there is no evidence in the record supporting Plaintiff's allegation. Further, Crown argued that the intervening acts of the driver of the vehicle in which Plaintiff was riding on the night of the accident supersede any alleged negligence on Crown's part.

Doc. 153 at 2 (Order denying Crown's motion for reconsideration) (cites omitted; footnote added); *see also* 2010 WL 1963382, at *1 (S.D. Ga. May 13, 2010). The Court denied Crown's motion for summary judgment, reasoning that its driver violated Crown's own driver safety rules requiring drivers to get off the road and invoke Crown's roadside repair service, not "self-serve." Doc. 153 at 5. And as it said earlier, it may be that the driver of Sommers's car was drunk and failed to maintain his lane of travel, thus superseding any negligence on Crown's part. A jury, however, must sort that out. Doc. 147 at 9-11.

Sommers has retained experts to prove liability and damages. To get their testimony admitted at trial, he must ensure that

---

[2]  Thus, says Sommers, "Crown acted negligently by permitting Hall to continue driving its trailer despite Crown's knowledge that the trailer's lights were malfunctioning." Doc. 147 at 3.

(1) [each] expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals*, *Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). There are thus three discrete inquiries: qualifications, relevance, and reliability. The burden of establishing these three requisites lies with the proponent. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

*Kuithe v. Gulf Caribe Maritime, Inc.*, 2009 WL 4694790 at * 1 (S.D. Ala. Nov 25, 2009).

Sommers has tendered Dr. Wayne Plumly as an economic expert to determine the present and projected value of his damages. Doc. 42. On liability, he has disclosed Kevin Breckinridge as an expert to, among other things, assess the compliance of defendants Warrior Transportation, LLC and Crown with Federal Motor Carrier Safety Regulations. Doc. 43; doc. 125 at 2.

Moving to strike both experts, Crown complains that Plumly's report is grossly incomplete. Doc. 101 at 11. And Breckinridge did not draft his report as required by Fed. R. Civ. P. 26(a)(2)(B), but apparently let an attorney do it. Doc. 101 at 11. Worse, he tried to conceal that fact.

*Id.* Finally, his report fails to satisfy Fed. R. Evid. 702 because, *inter alia*, he engaged in "selective use of the evidence" and "has no opinion on whether [the truck driver, Hall], "was in fact unqualified"). Doc. 101 at 10; *see also* doc. 135 (follow-up brief).[3]

Sommers counters that his experts' "reports are sufficiently compliant under the rules and therefore should not be stricken." Doc. 125 at 1; doc. 155. Plumly, he insists, is free to "supplement" his report as his investigation continues, and if Crown cannot show prejudice -- that is, "Plumly's continued investigation will not cause unfair surprise to [Crown] or unduly burden [it] [--] then his allegedly insufficient expert report will not bar his being called as a witness for [Sommers]." Doc. 125 at 3. As for Breckinridge, ghostwritten expert reports are not *per se* "strike-able." *Id.* at 4-5. Too, legal liability is affected by whether Crown acted as the "Motor Carrier" in this case, so an opinion as to whether Crown or Warrior acted as the Motor Carrier is relevant to plaintiff's liability theory. *Id.* at 5-6. Finally, to opine on that topic is not to render a legal opinion. *Id.* at 6-7.

---

[3] Because Crown's strike motion could have been mooted by a then-pending summary judgment motion, the Court initially denied it without prejudice to renew upon denial of the summary judgment motion. Doc. 139. Crown renewed its motion. Doc. 154.

To prevent surprise and unnecessary discovery costs, Rule 26(a)(2)(B)(i)-(iii) requires expert witness reports to disclose (a) the opinions the witness will express and the basis and reasons for them; (b) the information considered by the witness in forming the reported opinions, and (c) the exhibits that will be used by the expert to summarize or support his opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). Justified or harmless delay in disclosing such opinions may be tolerated, but not vice versa. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310-11 (11th Cir. 2009); *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008); *Carreno v. Home Transp., Inc.*, 2010 WL 2293391 at * 2 n. 3 (M.D. Fla. Jun 7, 2010) (excluding expert's opinion that was not addressed in his earlier, Rule 26(2)(B) report over which he had been deposed) (citing *Goodby's Creek, LLC v. Arch Ins. Co.*, 2009 WL 1139575 at *3 (M.D. Fla. 2009) (having to depose a party on information that was not disclosed in a Rule 26 report constitutes prejudice and therefore cannot be "harmless")). A report that merely lists legal conclusions will not suffice. *Goodby's Creek,* 2009 WL 1139575 at *2.

The rule permits a party to supplement his expert report, Rule 26(a)(2)(D), but given the obvious potential for abuse, this is a limited option:

> Rule 26(e)(1)(A) requires supplementation in situations where "the party learns that in some material respect the [original] disclosure or response is incomplete or incorrect[.]" Hence, it has been held "Rule 26(e) allows supplementation of expert reports only where a disclosing party learns that its information is incorrect or incomplete." *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2008 WL 4832658, at *2 (N.D. Okla. Oct.28, 2008). Still, a report that suffers from "a major omission" cannot be cured by the use of supplementation. *3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*, Civil No. 03-3364 (MJD/JGL), 2005 WL 6007042, at *4 (D. Minn. Aug.29, 2005) (alteration and internal quotation marks omitted). Supplementation of an expert report pursuant to Rule 26(e) also "does not cover failures of omission because the expert did an inadequate or incomplete preparation." Id. (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). Indeed, "Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading." *Akeva*, 212 F.R.D. at 310; *see also Oklahoma*, 2008 WL 4832658, at *2. In short, the provision exists to "impose [] a duty[,]" not to grant any "right to produce information in a belated fashion." *3M Innovative Props. Co.*, 2005 WL 6007042, at *4 (internal quotation marks omitted).

*Goodby's Creek*, 2009 WL 1139575 at * 2.

The Court agrees with Crown that Plumly should be stricken as an expert. Sommers disputes none of Crown's complaints about Plumly's report. While Plumly identifies himself as a college economics professor,

he fails to identify any of his opinions -- not even a calculation of plaintiff's lost earnings -- much less the data on which he relies. Doc. 42. At most he promises to calculate such damages based upon specified sources. *Id.* at 2. This "maybe I'll tell you someday" approach mocks the very purpose of Rule 26(a)(2), as well as the supplementation provision. Worse, Sommers has simply ignored Crown's written request for supplementation. Doc. 101 at 4. In that Sommers basically submitted no meaningful expert witness report to begin with, it would obviously run up Crown's defense costs and unjustifiably violate the Court's time-deadline to let him casually "supplement" (in effect, simply tender an initial expert witness report) when he feels like getting around to it.

Crown also contends that since Breckinridge's expert witness opinions are not relevant to Sommers's theory of recovery, they are not helpful to the jury, so Breckinridge, too, must be stricken as an expert witness. Doc. 135 at 3. Plaintiff, Crown reminds, insists that Crown is liable to him for Crown's own negligence. *Id.* (citing doc. 32 ¶¶ 19-20). And plaintiff also pleads a *respondeat superior* recovery theory, but against Warrior Transportation, not Crown. *Id.* (citing doc. 32 ¶¶ 22-23).

So Breckinridge's "statutory employer" opinion goes to an unpled claim and thus is irrelevant and strike-able. *Id.*

Crown is only partially correct. Breckinridge does opine that Hall was Crown's "statutory employee," doc. 43 at 7, and that is excludable as irrelevant;[4] moreover, it is an "ultimate legal conclusion"[5] -- "it offers

---

[4] Plaintiff's original complaint alleges that "[a]t the time of the collision, Defendant Hall was an employee or agent of Defendant Warrior." Doc. 1-1 at 5 ¶ 11. He further alleges that "Defendant Warrior is liable for the actions of Defendant Hall under the doctrine of respondeat superior." *Id.* at 56 ¶ 23. His latest amended complaint again alleges that, "[a]t the time of the collision, Defendant Hall was an employee or agent of Defendant Warrior." Doc. 32 at 3 ¶ 11. Yet, "[s]everal hours prior to the collision, [Crown], by and through its agent and/or employee, was informed by Defendant Hall that the tail lights on its trailer were malfunctioning. Defendant Hall was instructed by Wade Kelly, the trucking supervisor for [Crown], to proceed on to Defendant Crown's facility in Jacksonville, Florida." *Id.* at 3 ¶ 14. Crown's negligence is pled here: "19. [Crown] owed a duty to Plaintiff and other motorists to ensure that the tail lights on its trailer were functioning properly. 20. [Crown] breached this duty by instructing Defendant Hall to proceed on to its facility in Jacksonville, Florida, with malfunctioning tail lights." *Id.* at 4 ¶¶ 19, 20.

As noted *supra*, this Court denied Crown's summary judgment motion, and Sommers's negligence claim *by definition* is premised on some sort of upstreaming (*respondeat superior*) liability. Relevant here, then, is factual and perhaps expert opinion testimony showing how, under trucking industry norms, standards and regulations, Hall came to obey Crown's direction even though Crown is not alleged to be his employer. An expert's opinion thus may assist lay jurors on that score, and that is the litmus test for the opinion's admissibility. *See, e.g., Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1252 (11th Cir. 2010). At the same time, calling Hall a "statutory employee" goes to whether Crown was a carrier who violated the Federal Motor Carrier Safety Regulations, *see, e.g., Crown Amerigas Propane, LP v. Landstar Ranger, Inc.*, 109 Cal. Rptr. 3d 686, 697-98 (Cal. App. 4 Dist. 2010), something that Sommers has never pled (hence, it is not an issue in this case).

[5] The Eleventh Circuit has

> held that an expert witness may not testify as to his opinion regarding ultimate legal conclusions. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness ... may not testify to the legal implications of conduct; the [district] court must be the jury's only source of law."). However, pursuant to Fed. R. Evid. 704(a), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, we have held that an expert witness may testify as to his opinion on an ultimate issue of fact, so long as the opinion is "based on the personal observations of the witness." *Carter v. DecisionOne Corp. Through C.T. Corp. System*, 122 F.3d 997, 1005 (11th Cir. 1997).

*United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009) (footnote omitted). *Compare Maldonado v. Snead,* 168 F. App'x 373, 385-86 (11th Cir. 2006) (court, upon defendant's motion for summary judgment in civil rights action, acted within its discretion in striking plaintiff's expert witness affidavit that contained nothing but legal conclusions, conclusory statements of fact, irrelevant facts, and facts that would be inadmissible at trial), and *Johnson v. Avco Corp.*, ___ F. Supp. 2d ___, 2010 WL 1329361 at * 11-12 (E.D. Mo. Apr. 6, 2010) (expert "may discuss the evidence indicating that Swan had not sufficiently practiced night landings and he may discuss the requirements outlined in the regulations, but he may not opine about whether Swan in fact violated the regulations."), *with Delatorre,* 308 F. App'x at 383-84 (expert's statements that a drug conspiracy defendant was a "supplier" and a "major supplier" of cocaine to a prosecution witness' organization did not give an impermissible opinion on an ultimate issue of law, but was an admissible opinion on an ultimate issue of fact), *United States v. Long*, 300 F.App'x 804, 813-14 (11th Cir. 2008) (forensic accountant's testimony that defendant's operation of payday loan company bore the hallmarks of a Ponzi scheme was not an improper opinion regarding defendant's mental state or legal conclusion, in prosecution for conspiracy to commit wire fraud and mail fraud, and thus, was proper expert testimony), and *Hewitt v. Liberty Mut. Group, Inc.*, ___ F.R.D. ___, 2010 WL 2505912 * 5 (M.D. Fla. May 27, 2010) (in homeowners' action against insurer of their homeowners' insurance policy, alleging that insurer breached insurance contract by denying coverage for damage to the roof of their residence that homeowners attributed to windstorms, insurance adjuster was qualified based on his experience and training to testify as an expert as to his opinion whether there was coverage for the damage to homeowners' residence under the insurance contract provisions in dispute; although insurance adjuster conceded he was not qualified to exclude a construction defect as a cause of the damage, he had 18 years of experience as an insurance adjustor, and the opinions he was offering in the case were of the type he rendered in the ordinary course of his profession).

arguments." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care, Inc.*, 2009 WL 6357793 at * 21 (M.D. Fla. Jan. 9, 2009) (quotes and cite omitted). But he presents a wealth of other factual data supporting Sommers's negligence claim against Crown, and ample explanation for his opinion -- e.g., that Crown and co-defendant Warrior are responsible for Hall's illegal vehicle parking, doc. 43 at 10, an alleged proximate cause of plaintiff's injuries.

It is true that Breckinridge's report is lacking in various places. For example, he furnished only his "schedule of fees," and not what Sommers is paying him. Doc. 43-1 at 8. But that is not a fatal defect -- though the Court **DIRECTS** plaintiff to furnish Crown with that information forthwith -- in that it at best constitutes cross-examinational fodder.

The same may be said for the remainder of Crown's objections; they go to weight, not admissibility. For that matter, lawyers sometimes write opinions for *judges* to sign. *Jefferson v. Upton*, ___ U.S. ___, 130 S. Ct. 2217, 2219-20 (2010) (noting that state court judge denied state habeas relief to death-sentenced petitioner by signing unchanged an order written by respondent's counsel). In plain-vanilla civil cases, that

fact alone does not render judicial opinions invalid *per se*. The same must be said for an expert witness opinion. It is what the expert adopts and states as his own that matters. It is, after all, the expert, and not his scrivener, who will face the cross-examinational crucible -- just as it is the judge, and not his scrivener, whose opinion will face public/appellate scrutiny.

There are other "legal opinion" type objections (e.g., that Crown was the "motor carrier"[6] in this undertaking, doc. 101 at 7-8), but as the cases set forth in n. 4 *supra* show, it is not always clear cut whether an expert's opinion on whether someone or some entity complied with a set of regulations steps over the "legal opinion/expert opinion" line. For that matter, expert reports do *not* go to the jury. At-trial objections can "safety-valve" some of these borderline issues.

It is in that sense, then, that seeming "legal conclusions" are not fatally toxic to the entire report. *Kuithe,* 2009 WL 4694790 at * 5 ("It is

---

[6]  This term drives the analysis in insurance coverage disputes following trucking accidents, *see Sommers,* 2010 WL 1963382 at *1; *Lewis v. D. Hays Trucking, Inc.,* 701 F. Supp. 2d 1300 (N.D. Ga. 2010), as well as in federal liability cases. *See, e.g., Vargo-Schaper v. Weyerhaeuser Co.,* ___ F.3d ___, 2010 WL 3075701 at * 2 (3rd Cir. Aug. 9, 2010) ("Common carriers . . . are subject to the Federal Motor Carrier Safety Regulations. 49 C.F.R. § 390.5."); *American Home Assur. Co. v. RAP Trucking, Ins.,* 2010 WL 547479 at *5 (S.D. Fla. Feb. 5, 2010) ("The Carmack Amendment ... subjects a motor carrier transporting cargo in interstate commerce to absolute liability for 'actual loss or injury to property.") (quotes, cite and alterations omitted).

not uncommon for experts to extrapolate existing rules and recommendations to similar, technically uncovered situations."); *In re Knudsen*, 2010 WL 1994906 at * 7 (S.D. Ala. May 17, 2010) ("To the extent [an expert opinion] encroaches on a legal opinion, the court as the fact finder will simply disregard it."). After all, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a) (quoted in *Kuithe*, 2009 WL 4694790 at * 6).

Finally, factfinders can be counted on to meaningfully sift such distinctions, and rulings in this area sometimes are best left until trial because the line between opinions based on fact and law is not always that clear. *See, e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 62 (2nd Cir. 2010) (if a witness's own belief as to probable cause is relevant to the outcome of a case, for example, where a police officer is sued for false arrest, and claims that she believed she possessed probable cause to arrest, that witness's testimony about her own subjective belief may be admissible); *Cowden v. BNSF Ry. Co.*, 2010 WL 3306889 at * 4 (E.D. Mo. Aug. 19, 2010) (expert "may still opine on ultimate issues such as whether Defendant acted prudently or provided Plaintiff with a

reasonably safe work environment, so long as his opinions do not extend to whether Defendant's conduct actually violated certain laws or regulations"); *see also supra* n. 5 (collecting cases).

Crown raises another "motor carrier" objection -- this time on the ground that Breckinridge lacks any factual basis for opining that Crown, under federal law, occupied the "motor carrier" role in this incident. Doc. 101 at 8-10; doc. 135 at 5-6. "Crown merely disagrees with . . . Breckinridge's interpretation of the evidence," plaintiff responds. Doc. 125 at 8. Hence, he concludes, Breckinridge's "testimony is otherwise in compliance with Fed. R. Evid. 702 and should not be excluded." *Id.* at 7.

The Court agrees with Sommers. Crown's own brief (doc. 101 at 8-9) shows that there is "oral agreement" and documentary evidence in the record on what role Crown, versus Warrior, played here; such evidence sifting goes to weight (hence, Breckinridge can be cross-examined at trial on this matter), not admissibility (hence, his opinion should not be *Daubert*-struck).

To summarize, the Court **GRANTS** defendant Crown Products Company's motion to strike plaintiff Corey Sommers's expert witness, Dr. Wayne Plumly. Doc. 154. However, the Court **GRANTS** in part and

**DENIES** in part the motion as to expert witness Kevin D. Breckenridge. Hence, Sommers may not introduce at trial any part of Breckinridge's opinion that Crown was a "statutory employer" or that Crown violated any particular law. The remainder may be adduced, subject to any valid at-trial objections.

    **SO ORDERED** this  1st  day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA